UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STANTON LLP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-1636-B |
| | § | |
| ARGONAUT INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Stanton LLP's Motion to Remand (Doc. 8). For the following reasons, the Court **GRANTS** the Motion and **REMANDS** this case to the 101st Judicial District Court of Dallas County, Texas.

I.

BACKGROUND

This suit arises out of a dispute regarding a professional liability insurance policy Stanton obtained from Defendant Argonaut Insurance Company ("Argonaut"). Doc. 8, Mot. Remand, 1. Stanton alleges that Argonaut failed to retain defense counsel and provide a defense for Stanton. *Id.* Stanton filed suit against Argonaut on June 10, 2022 in the 101st Judicial District Court of Dallas County, Texas for breach of contract, breach of its common law duty of good faith and fair dealing, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Consumer Protection Act. *Id.*

Argonaut removed the suit to this Court on July 27, 2022. Doc. 1, Not. Removal. Argonaut alleged that removal was proper under 28 U.S.C. § 1332 because the parties were

completely diverse and the amount in controversy exceeded $75,000. *Id.* at 2. Regarding diversity, Argonaut alleged that it was a citizen of Illinois, as both its place of incorporation and principal place of business were in Illinois. *Id.* Further, it alleged that Stanton was a citizen of Texas. *Id.* Stanton filed this Motion to Remand on August 26, 2022 claiming Argonaut's principal place of business was actually in Texas, thus destroying diversity. Doc. 8, Mot. Remand, 8. The Motion is fully briefed and ripe for review. The Court considers it below.

## II.
## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017). Thus, courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Id.* "If the record does not contain sufficient evidence to show that subject matter jurisdiction exists, a federal court does not have jurisdiction over the case." *Id.* (internal quotations omitted).

A defendant may remove a case from state to federal court based on diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a), 1441(a). Diversity jurisdiction requires complete diversity, which is "[t]he concept . . . that all persons on one side of the controversy be citizens of different states than all persons on the other side." *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010). "The jurisdictional facts that support removal must be judged at the time of the removal." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000).

"The party seeking to assert federal jurisdiction . . . has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). In deciding whether this burden has been carried, a court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Because the burden falls on a defendant to establish jurisdiction, "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

## III.

## ANALYSIS

The Court first addresses the alleged jurisdictional facts. To start, it is undisputed that Stanton is a citizen of Texas. *See* Doc. 1, Notice of Removal, 2; Doc. 8, Mot. Remand, 2. In its Notice of Removal, Argonaut alleges that "it is an insurance company incorporated under the laws of Illinois, and its corporate headquarters and principal place of business is located at 225 West Washington Street, 24th Floor, Chicago, Illinois 60606." Doc. 1, Notice of Removal, 2. Argonaut also provides the Court a copy of Argonaut's information page on the Illinois Department of Insurance website[1] which lists Argonaut's domicile as Illinois, its incorporation date as May 21, 1957, and its corporate home as the Chicago address provided above. *See* Doc. 1-9, Ex. G. However, it lists a San Antonio, Texas address as Argonaut's administrative mailing address. *See id.*

---

[1] (available at https://insurance.illinois.gov/applications/RegEntPortal/ViewEntityDetails.aspx?en=82100&s=Active&t=INS)

Stanton argues Argonaut has failed to meet its burden to establish complete diversity. Doc. 8, Mot. Remand, 11–13. Further, Stanton argues that Argonaut should be judicially estopped from claiming its principal place of business is located in Chicago, Illinois. *Id.* at 14. It argues that Argonaut's "assertion that its principal place of business is also located in Illinois conflicts with its representations to courts, government agencies and the public." Doc. 8, Mot. Remand, 12. Stanton cites twenty-nine complaints filed by Argonaut between 2015 and 2022 that assert its principal place of business is located in San Antonio, Texas. *See id.* at 2–7. Stanton also cites six business and government agency websites where Argonaut's "headquarters," "primary location," or "location" is listed as San Antonio, Texas. *See id.* at 10. Further, Stanton attaches Argonaut's 2020 Foreign Profit Corporation Annual Report for the State of Florida. This report states Argonaut's principal place of business is located in San Antonio, Texas. *See id.* at 9; Doc. 8-1, Mot. Remand App., Ex. KK, 1. The report also lists Argonaut's officers and their addresses—all of which are listed as San Antonio, Texas. Doc. 8.1, Mot. Remand App., Ex. KK, 1–2.

Argonaut argues in response that its previous assertions of a principal place of business other than Illinois "are not evidence of where Argonaut's officers direct, control, and coordinate Argonaut's activities." Doc. 16, Resp., 4. Further, Argonaut includes a declaration from its corporate counsel Austin King that asserts "Argonaut's activities are directed, controlled, and coordinated at [its] office in Chicago." Doc. 16-1, App. Ex. 1, ¶ 7. King also declares these previous statements were "inadvertent mistakes" and have been corrected in any complaint still pending in federal court. Doc. 16, Resp., 6.

Because the Court finds that Argonaut has not met its burden in establishing jurisdiction, the Court **GRANTS** Stanton's Motion to Remand.

A.  *Whether Judicial Estoppel Prevents Argonaut from Claiming Its Principal Place of Business Is in Illinois*

Stanton argues Argonaut should be judicially estopped from denying its principal place of business is in Texas because it has consistently asserted that its principal place of business is in Texas in other complaints. Doc. 8, Mot. Remand, 14. However, "principles of estoppel do not apply" to questions of subject matter jurisdiction. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("Judicial estoppel principles cannot conclusively establish jurisdictional facts."); *see also In re Sw. Bell Tel. Co.,* 535 F.2d 859, 861 (5th Cir. 1976), *aff'd en banc,* 542 F.2d 297 (5th Cir. 1976), *vacated on other grounds,* 556 F.2d 370 (5th Cir. 1977).

Some courts have held that while subject matter jurisdiction cannot be created by judicial estoppel, it can be defeated. For example, the First Circuit has held that "although the doctrine of judicial estoppel cannot be applied to create federal subject matter jurisdiction that is otherwise lacking, it may be applied to prevent a party from basing federal subject matter jurisdiction on facts that directly contradict his previous representations to another tribunal." *Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 34 (1st Cir. 2018). And at least one district court in the Fifth Circuit has distinguished between creating subject matter jurisdiction through judicial estoppel and "merely reinforc[ing]" jurisdiction by judicial estoppel. *See Palmaz Sci., Inc. v. Harriman*, 2015 WL 13298400, at *9 (W.D. Tex. Oct. 7, 2015) (assuming arguendo that judicial estoppel is applicable to prevent a party from contradicting prior judicial admissions as to domicile).

However, the Fifth Circuit in dicta has cast doubt on a party's ability to use judicial estoppel to defeat subject matter jurisdiction. *See In re Sw. Bell Tel. Co.*, 535 F.2d at 861. In *In re Southwestern Bell Telephone Company*, the Fifth Circuit held:

> Whatever the scope of the [judicial estoppel] doctrine may be, so far as we have been able to discover it has never been employed to prevent a party from taking advantage of a federal forum when he otherwise meets the statutory requirements of federal jurisdiction. . . . A district court has no authority to negate that right simply because such a person has not observed the consistency in pleading that the forum state may demand.

*Id.* Given this cautionary language, this Court defers to the Fifth Circuit's application of judicial estoppel and declines to apply it here. *See Haverkamp v. Linthicum*, 6 F.4th 662, 671 n.8 (5th Cir. 2021) (collecting cases declining to apply judicial estoppel to jurisdictional disputes).

B.      *Whether Argonaut Met Its Burden as to Complete Diversity*

The Court must now determine if Argonaut met its burden in establishing complete diversity. To determine Argonaut's citizenship for the purposes of diversity jurisdiction, the Court refers to 28 U.S.C. § 1332(c)(1), which provides that "a corporation [is] deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." Though the statute does not define "principal place of business," the Supreme Court has provided the following guidance:

> "[P]rincipal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Hertz*, 559 U.S. at 92–93.

Courts must also be cautious of jurisdictional manipulation. *See id.* at 97. A corporation's assertion that a location is its headquarters does not, without more, settle the issue. *Id.* (considering an SEC filing). Courts interpreting *Hertz* examine where a corporation's

"high-level officers direct, control, and coordinate the corporation's activities." *Uglunts v. Americare Servs., Inc.,* 2013 WL 3809681, at *3 (N.D. Tex. July 23, 2013) (Fitzwater, C. J.) (collecting cases). While all officers need not work in the same location, courts should consider where a party's "most important decisionmakers" are located. *Lewis Mech. Sales, Inc. v. Union Standard Ins. Grp., LLC,* 2017 WL 11246844, at *5 (S.D. Tex. Nov. 8, 2017); *see also Uglunts*, 2013 WL 3809681, at *4 (considering in the principal place of business analysis where the corporation's chief operating officer, chief information officer, chief financial officer, and chief executive officer were located); *Balachander v. AET Inc.,* 2011 WL 4500048, at *9 (S.D. Tex. Sept. 27, 2011) (considering dispositive where a corporation's chief operating officer and chief financial officer were located).

Argonaut has not met its burden in establishing diversity jurisdiction. Argonaut does not provide evidence that establishes the identity and location of its officers and decisionmakers. Instead, it only provides King's conclusory statements that "Argonaut's activities are directed, controlled, and coordinated at [its] office in Chicago." *See* Doc. 16-1, App., Ex. 1, ¶ 7. These statements cannot establish by a preponderance of the evidence that Argonaut's principal place of business is in Chicago, Illinois. *See Lewis,* 2017 WL 11246844, at *5 (finding insufficient similar allegations of jurisdiction). As stated in *Lewis*, "[f]or the Court to hold otherwise would swallow the nerve-center test in *Hertz* and allow parties to engage in jurisdictional manipulation by requiring them to simply recite the talismanic phrase 'directed, coordinated, and controlled' to establish their principal place of business." *Id.* (citing *Hertz*, 599 U.S. at 97). Similarly, the mere recitation that Illinois is Argonaut's corporate home is insufficient to show that Chicago, Illinois is Argonaut's "actual center of direction, control, and coordination." *See Hertz*, 599 U.S. at 93.

Finally, the Court is not convinced that Argonaut's previous filings, which assert its principal place of business is in Texas, were merely "mistakes." The frequency of these mistakes and the proximity of these statements to Argonaut's filing of its Notice of Removal in this case further undermine Argonaut's current position that its principal place of business is in Illinois. Mark Twain once observed, "if you tell the truth you don't have to remember anything." Mark Twain, *Mark Twain's Notebook* 240, (Albert Bigelow Paine ed., 1935). Though the Court does not go so far as to find Argonaut dishonest, the Court surely doubts it will forget its principal place of business again.

The Court must resolve all doubts in favor of remand. *Gasch*, 491 F.3d at 281–82. Given Argonaut's conclusory assertions and prior inconsistent statements, the Court finds that sufficient doubt exists as to Argonaut's principal place of business. This doubt warrants remand. Thus, the Court concludes that it lacks subject matter jurisdiction over this matter.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Stanton's Motion to Remand (Doc. 8). This case is hereby **REMANDED** to the 101st Judicial District Court of Dallas County, Texas.

**SO ORDERED.**

**SIGNED: December 16, 2022.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE